Carl S. WRIGHT, Becky Kern, William Duffy, J. Mark Reimer, and Dennis Rose, Plaintiffs,

v.

Lian S. SCHOENBERGER, Douglas Jobson, Salvatore Corallo, Roman Rodriguez, Kenneth P. Zebrowski, Robert Berliner, Ryan S. Karben, William Barden, Gerold Bierker, Harriet D. Cornell, Theodore R. Dusanenko, Ellen C. Jaffee, Alan M. Simon, V.J. Pradhan, Patrick J. Moroney, John A. Murphy, and Frank A. Fornario, Defendants.

No. 02 Civ. 3047(JSR).

United States District Court, S.D. New York.

May 5, 2003.

George J. Cotz, Cotz & Cotz, Sloatsburg, NY, for Plaintiffs.

John D. Winter, Patterson, Belknap, Webb & Tyler, L.L.P., New York City, for Defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

In 1997, Rockland County was directed by this Court to bring its legislative districts into compliance with the one per-

son/one vote principle. *See Abate v. Rockland County Legislature,* 964 F.Supp. 817 (S.D.N.Y.1997). In response, the County Legislature fashioned an acceptable plan based on data from the 1990 census. Thereafter, however, when the 2000 census was released, it showed that as a result of both population increases and population movements in this rapidly developing county, there now existed unacceptably high population deviations between the newly-created legislative districts. *See* Affidavit of Philip D. Chonigman, sworn to November 12, 2002 ("Chonigman Aff."), ¶ 7, Ex. A (Legislative District Population Totals: 1990–2000). To remedy the situation, the County Legislature retained Philip Chonigman, an experienced redistricting expert, and directed him to re-draw the boundaries of the legislative districts so as to reduce such deviations to permissible limits with as little disruption as possible to the existing districts. *See* Affidavit of Ilan Schoenberger, sworn to November 12, 2002 ("Schoenberger Aff."), ¶¶ 6–7.

Mr. Chonigman presented his first proposal, entitled "R–1," to the Legislature's Special Committee on Reapportionment on January 24, 2002. Public comment was invited, in response to which, *inter alia,* the mayor of the Village of Sloatsburg complained that the proposal unfairly split Sloatsburg, which had previously been located in legislative District 6, into two legislative districts (Districts 1 and 12). *See* Schoenberger Aff. ¶¶ 9–10; Chonigman Aff. ¶¶ 10, 15–16, 16, Ex. C (Rockland County Legislative Redistricting Plan R1). In response to these and other objections, the proposal was amended and revised, ultimately culminating in "R–4," which among other changes, placed the entirety of Sloatsburg in District 1. *See* Chonigman Aff., Ex. D (Rockland County Legislative Redistricting Plan R4).

Nonetheless, representatives from Sloatsburg objected to the new placement on the ground that it moved Sloatsburg from District 6, with which it allegedly had more affinity, into District 1, with which it had less. *See* Schoenberger Aff., ¶ 20, Ex. C (Letter from Carl S. Wright, Mayor of the Village of Sloatsburg, to County Legislator, dated March 1, 2002), Ex. D. (Memo from Carl S. Wright, Mayor of the Village of Sloatsburg, to Rockland County Legislators, dated March 27, 2002). In response, Mr. Chonigman argued that the very substantial population growth in former District 6 made continued placement of the entirely of Sloatsburg within that district inconsistent with any balanced one person/one vote plan. *See* Chonigman Aff. ¶ 18; Schoenberger Aff. ¶ 13.

Ultimately, after further public comment and debate, the Rockland County Legislature adopted Proposal R–4, now embodied in Local Law 5, by a vote of 11 to 6. *See* Affidavit of George J. Cotz, sworn to November 29, 2002, Ex. Q (Minutes of April 16, 2002) at 409. Although Local Law 5 was then vetoed by the County Executive, the County Legislature overrode this veto on May 21, 2002 by a vote of 12 to 5. *See* Schoenberger Aff. ¶ 21.

Plaintiffs then brought this suit, challenging Local Law 5 on various grounds, all but one of which was dismissed, by prior order of this Court, on December 31, 2002. *See* Order, 12/31/02. As to the remaining claim—that the new District 1 mandated by Local Law 5 somehow contravenes sections 4 and 5 of Article III of the New York Constitution—the Court now grants defendants' motion for summary judgment dismissing that claim as well, for the following reasons.

To begin with, sections 4 and 5 of Article III pertain on their face to districting requirements for the state senate and state assembly, rather than for the county legislative districts. Plaintiffs expressly concede as much, *see* Plaintiffs' Brief in Oppo-

sition to Summary Judgement [sic] Motion, dated November 29, 2002 ("Pls.Br."), at 18, but contend that the provisions "reflect a philosophical approach to apportionment which has been ignored by these Defendants," *id.* But even assuming, rather doubtfully, that a legal claim can be premised on the basis of ignoring a "philosophical approach," in actuality Local Law 5 accords with the approach embodied in sections 4 and 5.

Section 4 of Article III of the New York State Constitution, relating to the state senate, provides in pertinent part:

> [Senate] districts shall be so readjusted or altered that each senate district shall contain as nearly as may be an equal number of inhabitants, excluding aliens, and be in as compact form as practicable, and shall remain unaltered until the first year of the next decade as above defined, and shall at all times consist of contiguous territory, and no county shall be divided in the formation of a senate district except to make two or more senate districts wholly in such county.

Section 5 of Article III of the New York State Constitution, relating to the state assembly, provides in pertinent part:

> In any county entitled to more than one member, the board of supervisors, and in any city embracing an entire county and having no board of supervisors, the common council, or if there be none, the body exercising the powers of a common council, shall ... divide such counties into assembly districts as nearly equal in number of inhabitants, excluding aliens, as may be, of convenient and contiguous territory in as compact form as practicable....

Plaintiffs' specific claim is that the new District 1 of the Rockland County Legislature created by Local Law 5 is neither "contiguous" nor "compact" in the manner that would be required by these provisions if state senate or state assembly districts were involved.

■ With respect to "contiguity," plaintiffs' claim borders on the frivolous, for the New York Court of Appeals has defined "contiguous territory" under these sections simply to mean "territory touching, adjoining and connected, as distinguished from territory separated by other territory." *Sherrill v. O'Brien,* 188 N.Y. 185, 207, 81 N.E. 124 (1907). Plaintiffs concede that the new District 1 is a "single, large area" that meets the Court of Appeals' definition, *see* Pls. Br., at 5; but they nonetheless contend that the presence of Harriman State Park in the middle of the District, separating the Town of Stony Point in the north from the Village of Sloatsburg in the south, is a "physical barrier" that somehow renders District 1 non-contiguous. *Id.* at 20. On this theory, any plan for a district containing a state park, a lake, a forest, a mountain, or any other large physical entity that did not locate that entity on the edge of the district would offend the New York State Constitution, an absurd result that has no support in the applicable precedents. *See Sherrill,* 188 N.Y. at 207, 81 N.E. 124. *See, e.g., Schneider v. Rockefeller,* 31 N.Y.2d 420, 430, 340 N.Y.S.2d 889, 293 N.E.2d 67 (1972) (holding that the "requirement of contiguity is not necessarily violated because a part of a district is divided by water"). Moreover, by the rural/suburban standards of Rockland County no reasonable fact-finder could conclude that Harriman State Park constitutes so substantial a physical barrier as to render the district "non-contiguous," since the separation it allegedly imposes between Sloatsburg and the rest of the District is, on plaintiffs' own submission, no more than a nine mile drive. *See* Plaintiffs' Local Rule 56.1 Statement at ¶ 1.

As for "compactness," plaintiffs concede that District 1 is "more regular in shape than many other districts." Plaintiffs' Local Rule 56.1 Statement at ¶ 1. But they argue that it is not "compact" because, again, of the inclusion of Harriman State Park within its borders and/or because Sloatsburg voters have no "community of interest" with the rest of District 1 in that they do not share common schools, common sewer districts, and other such facilities, and in that they have different economic and environmental interests. *Id.* The former argument, relating to Harriman State Park, fails for the same reasons it failed with respect to "contiguity." As for the latter argument, it is true that, even though the statutory language of sections 4 and 5 seems to suggest that "compact" is used in a purely spacial or geographic sense, the New York Court of Appeals has more broadly interpreted it, stating that while it "has no precise meaning within the context of the constitutional mandate," it may embrace "numerous factors." *Schneider* 31 N.Y.2d at 429–30, 340 N.Y.S.2d 889, 293 N.E.2d 67. At the same time, however, the Court has approved "leaving to the determination and discretion of the Legislature the degree of compactness which is possible in the total representation picture," *Id.* at 430, 340 N.Y.S.2d 889, 293 N.E.2d 67, and has ruled that that determination, whether in respect to compactness or any other aspect of a redistricting plan, will be overturned "only when it can be shown beyond reasonable doubt that [the plan] conflicts with the fundamental law." *Wolpoff v. Cuomo*, 80 N.Y.2d 70, 77, 587 N.Y.S.2d 560, 600 N.E.2d 191 (1992) (internal quotation marks omitted).

Here, the uncontroverted evidence is that in fashioning the Rockland County legislative districting plan, the Legislature balanced various legitimate concerns, including the overriding goal of population equality, a desire to cause as little disrup-

tion as possible to the existing districts, and respect for the requests of villages (including the Village of Sloatsburg) to be maintained wholly within a single legislative district. The Legislature thus properly exercised its discretion to determine "the degree of compactness [that was] possible in the total representation picture." *Schneider*, 31 N.Y.2d at 430, 340 N.Y.S.2d 889, 293 N.E.2d 67.

In short, plaintiffs' purported claim under sections 4 and 5 is deficient, both because these sections do not apply to the county legislature at all, and also because, even if they did, their requirements were here complied with. Accordingly, defendants' motion for summary judgment on plaintiffs' sole remaining claim is hereby granted, and plaintiffs' complaint is hereby dismissed in its entirety. Clerk to enter judgment.

SO ORDERED.